IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA
                    Respondent

        Against

CAMILO AGUIRRE
                    Respondent

**Criminal Action No.
1:00-10224-001 (RCL)**

**Appeal Docket No. 02-2497**

---

**MEMORANDUM OF LAW IN SUPPORT OF
PETITIONER'S MOTION UNDER SECTION 2255 OF TITLE 28**

---

Now Comes, the Petitioner, Camilo Aguirre, acting pro se, who respectfully moves this Honorable Court to Vacate, set aside, or correct his sentence for the following reasons:

A.  PETITIONER SIXTH AMENDMENT RIGHT WERE VIOLATED DUE TO HIS DEFENSE COUNSEL'S LACK OF EFFICIENCY, SINCE THE BREACH OF AGREEMENT BY THE GOVERNMENT WAS NOT NOTED BY THE DEFENSE COUNSEL EITHER IN THE DISTRICT COURT OR THE COURT OF APPEALS.

B.  PETITIONER'S SIXTH AMENDMENT RIGHT TO TRIAL BY JURY WAS VIOLATED WHEN THE DISTRICT COURT ENHANCED PETITIONER SENTENCE BASED ON A QUANTITY OF DRUG DIFFERENT FROM THE ONE ESTABLISHED IN THE AGREEMENT WITH THE DISTRICT ATTORNEYS OFFICE, AND BASED ON §3B1.1(c) OF THE U.S.S.G., CONTRARY TO THE RECENT SUPREME COURT OPINION IN BLAKELY V. WASHINGTON, AND THE SUBSEQUENT DECISION IN BOOKER AND FANFAN.

The Petitioner's reasons for his claims are more fully described below:

1

## STATEMENT OF THE CASE

The petitioner was prosecuted in the United States District Court, District of Massachusetts, in a nineteen count superceding indictment returned on September 20, 2000. Count One charged him with conspiracy to possess with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §846. Counts two through sixteen and nineteen, charged him with possession with intent to distribute and distribution of a quantity of cocaine in violation of 21 U.S.C. §841 (a)(1). He was also charged with aiding and abetting the distribution alleged in Counts Five, Twelve, Thirteen, Fifteen and Nineteen, in violation of 18 U.S.C. §2.

On January 24, 2002 the petitioner appeared with counsel before the Honorable Reginal C. Lindsay, in the United States District Court, District of Massachusetts, and, pursuant to a plea agreement with the United States Attorny's office, entered a guilty plea as to all the counts in which he was charged.

On October 28, 2002 petitioner was sentenced by Judge Lindsay to one hundred thirty-five months in prison to be served concurrently on all counts, followed by a sixty month term of supervised release and was also ordered to pay a $100 special assessment on each of the seventeen counts of conviction.

## STATEMENT OF FACT
## INDICTMENT No. 1:00-10224-001 RCL

On September 20, 2000, a Federal Grand Jury sitting in Boston returned a superceding indictment charging Camilo Aguirre with one count of conspiracy to possess with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §846. Count two through sixteen and nineteen, charged him with possession with intent to distribute and distribution of a quantity of cocaine in violation of 21 U.S.C. §841(a)(1). He was also charged with aiding and abetting the distribution alleged in Counts Five, Twelve, Thirteen, Fifteen an Nineteen, in violation of 18 U.S.C. §2.

Camilo Aguirre, on January 24, 2002, appeared with counsel before the Honorable Reginal C. Lindsay, in the United States District Court, District of Massachusetts, and, pursuant to a plea agreement with the United States Attorney's office, entered a guilty plea as to all counts in which he was charged.

### THE PLEA AGREEMENT

The Plea Agreement states in relevant part:

"The parties agree to take the position that the total quantity of cocaine atributable to the Defendant is between five and fifteen kilograms. Accordingly, the parties agree that the Defendant's base offense level is 32, pursuant to U.S.S.G. §§2D1.1(c)(4)."

"The U.S. Attorney will take the position, pursuant to U.S.S.G. §3B1.1(c), that a two level upward adjustment is warranted for the Defendant's managerial role in the offense. The Defendant will take the position that no upward adjustment is warranted.

See Plea Agreement at Page No. 2. See Appendix A.

3

## THE PLEA HEARING

At the plea hearing, the Petitioner raised a interesting point related to his plea agreement. Mr. Gillespie, Petitioner's counsel, made the court aware of the substance of the plea agreement related to the quantity of drug involved in the conspiracy or the quantity of drug that Petitioner plead guilty to.

> "He raises an interesting point, Your Honor. We have agreed that the quantity is between 5 kilograms and 15 kilograms."

**See Plea Hearing at Page No. 13.**

The following excerpt of the Plea Hearing Transcript, better illustrates petitioner's assertation here, related to the quantity of drug involved in his plea agreement.

MR. GILLESPIE: He raises an interesting point, Your Honor. We have agreed that the quantity is between 5 kilograms and 15 kilograms.

THE COURT: Yes.

MR. GILLESPIE: My understanding all along, I think it's still correct, is that he is free--we are free to dispute any quantity within that range as the final quantity found by the Court. We just simple agree that it's in that range, but we don't agree where--for example, if the Court finds that it's 5 kilograms, 400 grams, 5.4 kilograms, we could agree or disagree with that. If the Court finds that it's 500 grams, we could not disagree with that. We could not appeal that decision.

THE COURT: Let me understand what you are saying. You understand that if I--you agree that the quantity of cocaine involved in this case is between 5 and 15.

4

          MR. GILLESPIE:  Right, that it's at least five
but it's no more than 15 kilograms.

          THE COURT:  Okay.

          MR. GILLESPIE:  Any place in between is subject
to disagreement.

          THE COURT:  So if I find that it's 7.5 --

          MR. GILLESPIE:  We can disagree with that.

          THE COURT:  You think it's 3, you have a right
to appeal?

          MR. GILLESPIE:  Well, I don't think I would have
the right to appeal --

          THE COURT:  You can certainly argue anything to
me in that range, I understand.  The question is if I find
that it's 15, and you say it's 5.

          MR. GILLESPIE:  Right.

          THE COURT:  Do you believe you have a right to
appeal under those circumstances?

          MR. GILLESPIE:  Yes, I do.

          THE COURT:  Is that what you understand?

          I am finding within the range, now.

          MR. GILLESPIE:  Right.

          THE COURT:  This is your agreement, not mine.
So this is why I urge people not to do this because who

knows what they understood this agreement to mean.

MR. HAMILTON: Your Honor, if I may, Your Honor, I think Your Honor chose a number which may have confused me. If Your Honor found it was 14, which is considerably within the range, and the defendant said it's 7 --

THE COURT: Right.

MR. HAMILTON: I, frankly, I don't know what there would be to appeal, because Your Honor's sense then would be based on a range of 5 to 15, regardless of where within that range it falls and, therefore, the sentence would not necessarily be affected by where you would fall into that range. I don't know that there would be a right to appeal.

THE COURT: I don't -- I am not sure how the guidelines would affect that, but if I found -- I am not sure what 15 --

MR. HAMILTON: Only because I never -- just because it's right there, because the question is if it's -- I always have to look at the guidelines to see is it 15 or less or is it 14.999999 grams. It's within the range.

THE COURT: All right. Your point, if I understand it, is that there may not be a reason to appeal if it is between that range. The question is whether there is a reason or not, may he appeal? Because there

6

may not be a reason, because within that range, nothing --
the sentence is unaffected. The question is do you have
the right to appeal.

MR. GILLESPIE: I believe that our intention is
to reserve that right, certainly. We agree it's someplace
between 5 and 15, but we don't agree exactly where at this
point, and it remains to be seen what the exact government
position will be at sentencing, what probation will
recommend and what Your Honor will find. If in fact it
does make a difference in the sentence, then certainly we
would want to exercise our right to appeal, even though
it's within 5 to 15.

THE COURT: Well, my job is not to interpret
this agreement today.

MR. GILLESPIE: Right.

THE COURT: I just want your client to
understand that this is the kind of thing that happens
when you have -- when you waive your right to appeal. You
may disagree with this agreement. You may be wrong. In
other words, you may, Mr. Aguirre, your attorney's
interpretation, I am not saying it is, but his
interpretation of this agreement concerning your waiver of
the right to appeal may be wrong. He may have done it in
good faith, he may just be wrong, and you may not have the
right to appeal as he, Mr. Gillespie, believes you do.

7

But if he is wrong and you have waived your right to appeal, you don't have a right to appeal; do you understand me? Which is why I urge people not to do this, but you have a right to do it. You can do it if you like.

MR. GILLESPIE:  Well, Your Honor, I mean maybe we do not have a meeting of the minds after all, the plea agreement is a type of contract, basically.

THE COURT:  It is a contract, but, you know, if this plea is subject to this contract, you are bound by it.

MR. GILLESPIE:  I understand that.  This is why I would suggest that maybe it would be useful to get the government's position on what I have just said.  I mean I believe we agreed --

THE COURT:  I think I understand the government's position.  You tell me if I am wrong, just so you hear me say what I think the government said and if the government -- if I say it incorrectly, then Mr. Hamilton will correct me.

If the sentence -- if I -- if I impose a sentence based upon a quantity of cocaine between 5 and 15 grams, anywhere within that range, you do not have a right to appeal.  You have a right to appeal if I make a finding outside that range, but within that range, you do not have a right to appeal.  So that, for example, if I find it's

14 kilograms, and you say it's 7, I think that was your example, Mr. Hamilton, you do not have a right to appeal, because it's within a range of between 5 and 15. Have I said that correctly?

MR. HAMILTON:   I think that is correct, Your Honor.

If I could put it another way, which I think makes it -- yours is entirely clear but another way of saying it occurred while I was listening to Your Honor, and that is that Your Honor might make a sort of intermediate finding that you believe the quantity that is established by the evidence is 14 kilograms.

But ultimately, when it comes to setting forth the record for the sentence to impose, it's not unlikely that you would therefore say, "And therefore I agree with probation, and I agree with the parties, that the quantity of cocaine is between 5 and 15 kilograms."

That is what the parties agreed, and if you then imposed sentence based on that, you then reach a level computation based on that, that is what the parties agreed, and since that is what the parties agree, you would be imposing a sentence in that respect, at least based on what the parties agreed. Therefore, there would be nothing to appeal on that aspect of the sentence.

THE COURT:   Do you understand that,

9

Mr. Gillespie?

  MR. GILLESPIE:  Yes.

  THE COURT:  Mr. Aguirre, do you understand what Mr. Hamilton has said?

  THE DEFENDANT:  Yes.

  MR. GILLESPIE:  It just strikes me, Your Honor, there is another way of looking at it, and it will probably solve the situation.  We all agree that he should be at base level 32.  Base level 32 is between 5 kilograms and 15 kilograms.

  THE COURT:  Right.

  MR. GILLESPIE:  So the quantity probably is within that range irrelevant.

  THE COURT:  Well, that was a very early point that I was asking you about, Mr. Hamilton, it may not matter whether it's 7 or 14.

  MR. GILLESPIE:  Right because it only has reference to the base offense level.

  THE COURT:  Those quantities are only relevant to the extent that they drive what -- the offense level, so that when I said earlier you may not -- you may disagree, but you have no cause to appeal, that may mean that it doesn't matter.

  MR. GILLESPIE:  Right, right.

  THE COURT:  Within that range.

BY THE COURT:

Q.  Okay.  Now, have you heard all of this discussion, Mr. Aguirre?

A.  Yes, Your Honor.

Q.  Do you understand what we have been talking about?

A.  Yes, sir.

Q.  I heard the answer.  Sorry.  That is what happens when you know a little Spanish.  So have you understood, you have understood what we have been talking about?

A.  Yes, sir.

Q.  Based on that understanding, are you satisfied to waive your right to appeal in this agreement?

A.  Yes, sir.

**See Plea Hearing Transcript.  Page No. 13-20.**

## SENTENCING HEARING

At sentencing, adopting the PSR recommendation, the Court found that the quantity of drug atributable to Petitioner was the amount of 18.2 kilograms of cocaine, rather than 5 to 15 as it was stipulated in the plea agreement. This finding increase Petitioner's base offense level from 32 - which was the base offense level that the parties agreed - to level 34. The government did not recommended affirmatively the agreed upon sentence. The government did not take any adversary position to the District Court finding.

The Court also determined that Petitioner was a leader of the illicit drug activities described in the indictment. Thus, the Court enhanced Petitioner's guideline range by two additional levels under §3B1.1(c).

> "I think that while there's some ambiguity in certain of these conversations and contacts, that there is sufficient evidence for me to find that the defendant was a supervisor,..."

**Tr. 25, add., 18.**

The Petitioner contends here that the government, by adopting a silent position and not affirmatively recommending the agreed upon sentence when the Court adopted the recommendation of the PSR, increasing the Petitioner sentence from level 32 to level 34, based on the quantity of drug involved in the conspiracy, the government breached the plea agreement. Moreover, the Court committed plain error by not imposing the bargained sentence. Rule 11(e)(1)(C).

12

Petitioner's Sixth Amendment right to trial by jury was also violated when the Court enhanced his sentence based on §3B1.1(c) of the U.S.S.G., and based on a quantity of drug different from the one stipulated in the plea agreement. This in violation of the principles enunciated by the Supreme Court in Blakely vs. Washington, and the subsequent decisions in Booker and Fanfan.

13

## APPLICATION OF THE LAW
### INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment provides the Petitioner with the right to effective assistance of counsel <u>Evitts v. Lucey</u>, 469 U.S. 387 (1984). To suceed in his claim of ineffective assistance of counsel the petitioner must satisfy the two prong standard test announced in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  The petitioner must demonstrate both that his counsel's conduct was deficient and that the deficiency prejudiced the result of his proceedings.

The petitioner is mindful that counsel are not required to raise every conceivable argument.  <u>Evitts</u>, 469 U.S. at 394.  However, when counsel fails to present "significant and obvious issue while pursuing substantially weaker ones, his conduct may consititute ineffective assistance of counsel."

The circumstances of the instant case fall squarely within the framework delineated in <u>Evitts</u>.  Had Counsel adequately set forth a legal argument against the breach of the agreement by the United States Attorneys Office, either in the District Court of the Court of Appeals, there is a reasonable probability that Petitioner's sentence would not be increased from level 32 to level 34.

Given the background of this case, it is difficult to imagine what tactical advantage or cost could justify counsel's decision not to set forth an adequate legal argument or raise the issue on appeal.

Considering the likely success of Petitioner's claim, it is clear that counsel was ineffective and Petitioner was prejudiced.  Both the performance and prejudice components of any inquiry into an ineffective assistance of counsel claim are mixed question of law and fact and are entitled to de novo review.  <u>Strickland</u>, 466 U.S. 668, 698 (1984).

14

APPLICATION OF THE LAW

ARGUMENT No. 1

QUESTION PRESENTED

Here, the Petitioner submits the question of whether the defense counsel was ineffective for not noting to the Court the fact that the government breached the plea agreement by not bringing to the Court's attention the fact that the amount of drug stipulated in the plea agreement was 5 to 15 kilograms of cocaine instead of 18.2 kilograms as was found by the Court. This finding increase the Petitioner's sentence from level 32 to level 34, in violation of the plea agreement and in violation of Rule 11(e)(1)(C).

## DISCUSSION

Rule of Criminal Procedure Rule 11 (e)(1) states in relevant part:

> The attorney for the government and the attorney for the defendant - or the defendant when acting pro se - may agree that, upon the defendant's entering a plea guilty or nolo contendere to a charged offense, or to a lesser or related offense, the attorney for the government will:
>
> (a) move to dismiss other charges; or (B) recommend, or agree not to oppose the defendant's request for a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor is not applicable to the case. Any such recommendation or request is not binding on the court; or (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement or sentencing factor is or is not applicable to the case. Such a plea agreement is binding on the court once it is accepted by the court.
>
> The court shall not participate in any discussions between the parties concerning any such plea agreement.

Section (e) (3)  (Acceptance of a Plea Agreement) states in relevant part:

"If the court accepts the plea agreement, the court shall, inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement."

15

The Supreme Court had held in Rudolph Santobello v. New York, 404 US 257, 30 L Ed 2d 427, 92 S Ct 495 (1971) that "when a guilty plea rested in significant degree on a promise of the prosecutor, so that it could be said to be part of the inducemet, such promise must be fulfilled."

Justice Douglas, concurring with this opinion, expressed the view that "when a 'plea bargain' was not kept by the prosecutor, the sentence must be vacated and the state court should decide in light of the circumstance of each case whether due process required (1) that there be specific performance of the plea bargain, or (2) that the defendant be given the option to go to trial on the original charges, the defendant's preference to be given considerable, if not controlling, weight in choosing the appropriate remedy."

The First Circuit consistently has accepted the Supreme Court position related to the breach of agreement by the government and consistentely has held that a prosecutor's promise, accepted by a defendant in consideration of a plea agreement must be always honored. See United States v. Flemmi, 225 F. 3d 78 (1st Cir. 2000)

Where the government breaches its promise to make not sentencing recommendation, not to recommend a specific sentence, or by supporting a higher sentence than agreed to in the plea agreement, the sentence will be reversed. See United States v. Velez, 77 F.3d 11 (1st Cir. 1996).

A sentence will be reversed where the district court fails to impose the bargained - for sentence under Rule 11 (e)(1)(C). See United States v. Gilchrist, 130 F.3d 1131 (3d Cir. 1997).

In a recent decision in United States v. Goncy, 1st Cir., No. 02-2390, 2/2/04, the First Circuit found a prosecutor breach of agreement when the prosecutor emphasized the defendant's leadership role and other facts that pointed toward a higher sentence.

In United States v. Canada, 960 F. 2d 263 (1st Cir. 1992), the First Circuit held that the government breached a plea agreement when the prosecutor did not affirmatively recommend the agreed upon sentence, and where her comments "seemed to undercut such a recommendation." While the court in the case found the prosecutor's comments stopped short of expressy repudiating the agreement, it held that the Supreme Court's decision in Santobello v. New York, Supra, prohibits such "end-runs" around an agreement.

In the instant case, the government breached the plea agreement because did not affirmatively recommend the agreed upon sentence.

> "The parties agree to take the position that the total quantity of cocaine atributable to the Defendant is between five and fifteen kilograms. Accordingly, the parties agree that the Defendant's base offense level is 32, pursuant to U.S.S.G. §§2D1.1(c)(4).

**See Plea Agreement at Page No. 2.**

Rather than bringing to the Court attention the agreed upon sentence, the government took an adversary position in regard to the Petitioner's position related to the amount of drug envolved in the illegal activities. And, the defense counsel did not raised the appropriate objection, allowing the Court to enhance the Petitioner's sentence in 2 levels.

17

## APPLICATION OF THE LAW
## ARGUMENT No. 2

BLAKELY, BOOKER, AND FANFAN IMPUGNS AGUIRRE'S SENTENCE

The District court found that Camilo Aguirre was responsible for the amount of 18.2 kilograms of cocaine. That figure yielded a base offense level of 34 instead of 32 as was it stipulated by the parties in the agreement. **See Plea Agreement at page 2. See** **U.S.S.G. §2D1.1(c).**

The District Court also increased Camilo Aguirre's sentence based on U.S.S.G. §3B1.1(c) making its own findings - by a preponderance of the evidence - that Camilo Aguirre had a leadership role in the illegal activities charged in the indictment. **Tr. 25.**

The Supreme Court's recent opinion in <u>Blakely, Booker</u> and <u>Fanfan</u> plainly forbits judicial enhancement. Since every court has now recognized the <u>Blakely</u>'s application, Petitioner respectfully asks this Court to correct his sentence based on the authority of <u>Blakely</u>. Petitioner should be sentenced based on a guidelines range of 87-108, wich correspond to a base offense lvel of 29,[1] because the Supreme Court

---

1.   Petitioner's sentence was calculated as follows:  Total offense level 36 (level 34 based on U.S.S.G. §2D1.1(c)(3) plus 2 points enhancement based on U.S.S.G. 3B1.1(c); less 3 level reduction based on U.S.S.G. §3E1.1).  Petitioner's sentence should be calculated as follows:  Total base offense level 32 - as stipulated in the plea agreement - less 3 level reduction based on 3E1.1, which render a guidelines offense level of 29 and a guideline range of 87-108 months.

decision in <u>Apprendi</u>, <u>Blakely</u>, <u>Booker</u>, and <u>Fanfan</u> demonstrate that Aguirre's claims are valid and the relief he seeks must be granted. Aguirre's Constitutional Right to a jury trial was violated because Aguirre was punished for conduct that went above and beyond admissions, conduct that was neither admitted nor proved to a jury beyond a reasonable doubt.

In Addition, as dictated in <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328, 93 L. Ed.2d 649, 661, 107 S. Ct. 708 (1987), retroactivity for non-final cases still on direct review is not problem. The Supreme Court reaffirmed this mandate also in <u>Booker</u>. Aguirre's case was dicided after <u>Apprendi</u>, (Aguirre's conviction became final on June 2, 2004 and <u>Apprendi v. New Jersey</u> decided on June 26, 2000).

> "Because Kaua's direct appeal had not been decided before <u>Apprendi</u> was decided, Kaua's sentence was not final when <u>Apprendi</u> was decided. Application of <u>Apprendi</u> to Kaua's case is therefore not a retroactive application."

See <u>Kaua' v. Frank</u>, 350 F. supp. 2d 848 (D. Hawai'i 2004) (Quoting Griffith, 479 U.S. at 328, 107 S. Ct. 708).

> "<u>Apprendi</u> claims may not be raised in a federal prisoner's postconviction relief motion if his or her conviction occurred before <u>Apprendi</u> was decided."

See <u>Love v. Menifee</u>, 333 F. 3d 69 (2nd Cir. 2003).

> "Petitioner is therefore only eligible for relief if his conviction became final after June 26, 2000."

See <u>Logiudice v. U.S.</u>, 354 F. supp.2d 242 (E.D.N.Y. 2005).

As the Supreme Court states cristal-clear, <u>Blakely</u>, <u>Booker</u>, and <u>Fanfan</u> were dicted by precedent existing at the time of Aguirre's conviction became final.

19

"We reaffirm our holding in apprendi: Any fact
(other than a prior conviction) which is necessary
to support a sentence exceeding the maximum authorized
by the facts established by a plea of guilty or a jury
verdict must be admitted by the defendant or proved to
a jury beyond a reasonable doubt."

Booker, Id at 125 S. Ct. 756.

In Blakely, Justice O'Connor, which in Teague v. Lane, 489 U.S.
288 (1989) endorsed the governing rule of retroactivity proposed by
Justice Harlan, "that new rule should be applied retroactively to
cases on direct review, but that generally they should not be applied
retroactively to criminal cases on callateral review."  Id. at 303,
states:

"...and, despite the fact we hold in Schiro v. Summerlin,
post, p____, that Ring (and a fortiori Apprendi) does not
apply retroactively on habeas review, all criminal sentences
imposed under the federal and state guidelines since Apprendi
was decided in 2000 arguably remain open to collateral attack.
See Teague v. Lane, 489 U.S. 288, 301 (1989)(plurality
opinion)(a case announces a new rule if the result was not
dicted by precedent existing at the time the defendant's
conviction became final)."

Blakely, 542 U.S.____(2004).

Obviously, Justice O'Connor places Blakely within the only two
narrow exception in the retroactivity principles. (A new rule should
be applied to cases on collateral review if it places "certain kinds
of primary, private individual conduct beyond the power of the criminal
law-making authority to proscribe.") Id. at 311.  (A new rule should be
applied retroactively if it implicates fundamental fairness in a way
that seriously affects the likelihood of an accurate conviction.")Id.at
312-313.

Justice O'Connor's disenting opinion in <u>Blakely</u> is abundantly clear.  <u>Blakely</u> apply retroactively to all sentences imposed under the federal and state guidelines since <u>Apprendi</u> was decided in June 26,2000.  Aguirre's Sentence was imposed on October 28, 2002, therefore, the <u>Apprendi-Blakely</u> doctrine applicable to the Federal Sentence Guideline through <u>Booker</u>, is entire applicable to Aguirre's case.

For the foregoing reasons, Aguirre requests from this Court to grant relief based on <u>Apprendi</u>, and the subsequent Supreme Court's decisions in <u>Blakely</u>, <u>Booker</u>, and <u>Fanfan</u>.

## CONCLUSION

For the reasons stated, Camilo Aguirre's sentence should be vacated for resentencing.

Respectfully submitted,

CAMILO AGUIRRE
Reg. No. 23174-038 A/B
F.C.I. Elkton
P.O. Box 10
Lisbon, OH 44432

Dated:   April 21, 2005
Lisbon, Ohio

22

## CERTIFICATE OF SERVICE

I, Camilo Aguirre, the Petitioner pro se, swear under the penalty of perjury pursuant to Title 28 U.S.C.§1746, that I have forwarded the original and three (3) copies of Petitioner's Motion based on Title 28 U.S.C. §2255. With an additional copy being forwarded to the opposing party. Each was forwarded to the following address respectively:

```
MAILED TO:   Clerk of the Court
             United States District Court
             For the District of Massachusetts
             1 Courthouse Way Room 2300
             Boston, MA 02210


             James B. Farmer
             Assistant U.S. Attorney
             Chief Criminal Division
             I Courthouse Way, Suite 9200
             Boston, Massachusetts
             Boston, MA 02210
```

Camilo Aguirre
Reg. No. 23174-038 A/B
F.C.I. Elkton
P.O. Box 10
Lisbon, OH 44432

Dated:  April 21, 2005
Lisbon, Ohio

A  P  E  N  D  I  X  A

RECEIVED
U.S. PROBATION

2002 MAY 21  AM 10: 36

BOSTON-NEW CTHSE.

U.S. Department of Justice

*United States Attorney*
*District of Massachusetts*

*1 Courthouse Way, Suite 9200*
*Boston, Massachusetts 02210*

November 20, 2001

Raymond E. Gillespie, Esq.
875 Massachusetts Avenue
Cambridge, MA 02139

     Re:   United States v. Camilo Aguirre et al
           Criminal No. 00-10224-RCL

Dear Mr. Gillespie:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Camilo Aguirre ("Defendant"), in the above-captioned case. The Agreement is as follows:

     1.    Change of Plea

At the earliest practicable date, but in no event later than November 26, 2001, Defendant shall plead guilty to Count One in the above-captioned First Superseding Indictment, charging Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine, in violation of 21 U.S.C. § 846 and Counts Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen and Nineteen, charging Possession with Intent to Distribute and Distribution of Cocaine, in violation of 21 U.S.C. § 841(a)(1). Defendant expressly and unequivocally admits that he in fact knowingly, intentionally and willfully committed the crimes charged in Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen and Nineteen of the First Superseding Indictment, and is in fact guilty of those offenses.

     2.    Penalties

Defendant faces the following minimum and maximum penalties:

On each of Counts One and Nineteen, the Defendant faces a maximum penalty of life imprisonment; a minimum mandatory penalty of ten years' imprisonment; a fine of up to $4,000,000; a special assessment of $100; and at least five (5) years' supervised release upon completion of any

term of imprisonment imposed in connection with this case.

On each of Counts Three and Five, the Defendant faces a maximum penalty of 40 years' imprisonment; a minimum mandatory penalty of five years' imprisonment; a fine of up to $2,000,000; a special assessment of $100; and at least four (4) years' supervised release upon completion of any term of imprisonment imposed in connection with this case.

On each of Counts Two, Four, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen and Sixteen, the Defendant faces a maximum penalty of 20 years' imprisonment; a fine of up to $1,000,000; a special assessment of $100; and at least three (3) years' supervised release upon completion of any term of imprisonment imposed in connection with this case.

The Defendant is also subject to deportation to Colombia.

3.    Sentencing Guidelines

The parties will take the following positions at sentencing under the United States Sentencing Guidelines:

(a)    The parties take no position with respect to Defendant's Criminal History Category.

(b)    The parties agree to take the position that the total quantity of cocaine attributable to the Defendant is between five and fifteen kilograms. Accordingly, the parties agree that the Defendant's base offense level is 32, pursuant to U.S.S.G. §§ 2D1.1(c)(4).

(c)    The U.S. Attorney will take the position, pursuant to U.S.S.G. § 3B1.1(c), that a two-level upward adjustment is warranted for the Defendant's managerial role in the offense. The Defendant will take the position that no upward adjustment is warranted.

(d)    Safety Valve Adjustment

The Defendant will take the position that the Court should apply § 5C1.2 of the Sentencing Guidelines and 18 U.S.C. § 3553(f) and impose a sentence without regard to the statutory minimum-mandatory sentences that are otherwise applicable in this case. The Defendant also will take the position that, pursuant to § 2D1.1(b)(6) of the Sentencing Guidelines, his offense level should be reduced by an additional two levels.

The U.S. Attorney will take the position that the Court should not apply § 5C1.2 of the Sentencing Guidelines and 18 U.S.C. § 3553(f) because the Defendant's managerial role in the offense does not satisfy § 5C1.2(4). The

2

U.S. Attorney will recommend applying § 5C1.2 of the Sentencing Guidelines and 18 U.S.C. § 3553(f) if the U.S. Probation Department finds that the Defendant meets the requirements of sections 5C1.2(1-4) and the U.S. Attorney finds that the Defendant has disclosed truthfully all information and evidence concerning the offenses charged in the First Superseding Indictment.

The Defendant recognizes and acknowledges that, if the Court declines to apply § 5C1.2 of the Sentencing Guidelines and 18 U.S.C. § 3553(f), the Defendant will not receive an additional two level reduction pursuant to § 2D1.1(b)(6) of the Sentencing Guidelines and he will receive a sentence at or above the statutory minimum-mandatory term of ten years.

Based on Defendant's prompt acceptance of personal responsibility for the offense(s) of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1.

The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. § 3E1.1 if, at any time between the execution of this Agreement and sentencing Defendant:

    (a)    Fails to admit a complete factual basis for the plea;

    (b)    Fails to truthfully admit his conduct in the offenses of conviction;

    (c)    Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

    (d)    Fails to provide truthful information about his financial status;

    (e)    Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

    (f)    Engages in acts which form a basis for finding that Defendant has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

    (g)    Intentionally fails to appear in Court or violates any condition of release;

    (h)    Commits a crime;

    (i)    Transfers any asset protected under any provision of this Agreement; and/or

    (j)    Attempts to withdraw his guilty plea.

Defendant expressly understands that he may not withdraw his plea of guilty if, for any of the reasons listed above, the U.S. Attorney does not recommend that he receive a reduction in Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to declining to recommend an acceptance-of-responsibility adjustment, the Government may seek an upward adjustment pursuant to U.S.S.G. § 3C1.1 if Defendant obstructs justice after the date of this Agreement.

4. Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence before the District Court:

(a)     Subject to the application of any mandatory minimum term of imprisonment, the low end of the sentencing guideline imprisonment range as determined by the Court at the time of sentencing;

(b)     A fine within the guideline fine range, unless the Court finds pursuant U.S.S.G. § 5E1.2(e) that Defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay a fine;

(c)     Five (5) years' supervised release; and

(d)     A mandatory special assessment of $1700.00.

The U.S. Attorney and Defendant agree that there is no basis for a departure from the sentencing range established by the United States Sentencing Guidelines, except as explicitly reserved herein. Defendant reserves the right to argue for a one-level downward departure based on the restrictive conditions of his detention and of his anticipated incarceration due to his status as an illegal alien. The U.S. Attorney will oppose any such reduction. Neither the U.S. Attorney nor Defendant will seek a departure from the Sentencing Guidelines on any other ground.

In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves his right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

5.     Payment of Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

6.    Waiver of Rights to Appeal and to Bring Collateral Challenge

Defendant is aware that he has the right to challenge his sentence and guilty plea on direct appeal. Defendant is also aware that he may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255).

In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge:

>    (1)    Defendant's guilty plea and any other aspect of Defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and

>    (2)    The adoption by the District Court at sentencing of any of the positions found in paragraph 3 which have been agreed to by the parties.

Defendant's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect.

This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the U.S. Attorney therefore retains his appeal rights.

7.    Court Not Bound By Agreement

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge. Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(e)(1)(B). Defendant may not withdraw his plea of guilty regardless of what sentence is imposed. Nor may Defendant withdraw his plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties. In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any subsequent appeal or collateral challenge.

8.    Information for Presentence Report

Defendant agrees to provide all information requested by the U.S. Probation Office concerning his assets.

9.    Civil Liability

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in paragraph one of this Agreement.

10.    Rejection of Plea By Court

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Defendant, this Agreement shall be null and void at the option of the U.S. Attorney.

11.    Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement. Defendant recognizes that no such breach by his of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea. Defendant understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement, without any limitation. In this regard, Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

12.    Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

13.    Complete Agreement

This letter contains the complete agreement between the parties relating to the disposition of this case. No promises, representations or agreements have been made other than those set forth in this letter. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant,

6

please have Defendant sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Patrick M. Hamilton.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:

JAMES B. FARMER
Assistant U.S. Attorney
Chief, Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

PATRICK M. HAMILTON
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have had this letter read to me in my native language in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

Camilo Aguirre
Defendant

Date: 11 / 26 / 01

I certify that Camilo Aguirre has had this Agreement read to him in his native language and that we have discussed its meaning. I believe he understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

Raymond E. Gillespie, Esq.
Attorney for Camilo Aguirre

Date: 11 / 26 / 0,

N:\PHamilton\aguirre\plea.aguirre.ver2approv.wpd

8