UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAMILO AGUIRRE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 05-10817-RCL |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

GOVERNMENT'S OPPOSITION TO
CAMILO AGUIRRE'S SECTION 2255 MOTION

Now comes the United States of America, by and through the undersigned counsel, and hereby opposes Camilo Aguirre's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Camilo Aguirre ("Aguirre") raises two challenges to his sentence, neither of which has any merit. His first challenge -- that his defense attorney provided ineffective assistance of counsel -- is premised on the patently and demonstrably false contention that the government breached its agreement to take the position at sentencing that Aguirre was responsible for 5-15 kilograms of cocaine. Aguirre's second challenge is based on the Supreme Court's decisions in Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531 (2004), and United States v. Booker, 543 U.S. __, 125 S.Ct. 738 (2005), and has no merit since these decisions are not retroactively applicable to defendants like Aguirre whose conviction became final before those decisions were issued. Moreover, even if Booker (which, of the two decisions, is the only one applicable to the federal Sentencing Guidelines) were

retroactively applicable, the drug weight and role-in-the-offense sentencing enhancements found by this Court based on a preponderance of the evidence in no way violated Booker.

I.                   **FACTUAL BACKGROUND**

    A.   **Aguirre's Offense Conduct**:

By now, this Court is all too familiar with the factual background to Aguirre's prosecution. For reasons that are more fully described below, the government has, for the Court's convenience, attached hereto as Exhibit 1 a copy of pp. 7-104 of Aguirre's Presentence Report ("PSR"), which include a very detailed description of his offense conduct. Suffice it to say for the limited purposes of this opposition that Aguirre was a cocaine-trafficker whose activities were investigated by the U.S. Drug Enforcement Administration ("DEA") from early 1997 until his arrest on June 20, 2000. During the first phase of the investigation, a cooperating witness ("the CW") made controlled purchases of cocaine from Aguirre and/or his associates totaling 3,615.4 grams. See Ex. 1, PSR ¶354.

During the second phase of the investigation, DEA obtained court-ordered wiretaps on Aguirre's cellular telephone which were in place from approximately March 15, 2000 until early May, 2000. During this time frame, Aguirre had many coded, drug-related conversations with his cocaine customers as well as with his primary supplier, Liliana Cruz ("Cruz"). DEA also conducted

physical surveillance during this period, but no additional drug quantities were seized.

In the final phase of the investigation, the CW ordered 10 kilograms of cocaine from Aguirre, who, in turn, ordered them from Cruz. On June 20, 2000, Aguirre was arrested as he attempted to deliver the first 5 kilograms to the CW and, later that same day, the second 5 kilograms were seized from Cruz's apartment following her arrest.

    B.    **Aguirre's Plea Agreement**:

Then-Assistant U.S. Attorney William F. Sinnott ("AUSA Sinnott") was the prosecutor assigned to the Aguirre investigation and prosecution. See Affidavit of Patrick M. Hamilton ("Hamilton Aff."), attached hereto as Exhibit 2, ¶2 . By the time he left the U.S. Attorney's Office ("the USAO") in the summer of 2001, he had sent to Aguirre's attorney a draft plea agreement which contemplated that the parties would agree that the quantity of cocaine attributable to Aguirre was 5-15 kilograms. Hamilton Aff., ¶3.

Assistant U.S. Attorney Patrick Hamilton ("AUSA Hamilton") assumed responsibility for the prosecution of Aguirre and his co-defendants following AUSA Sinnott's departure, even though AUSA Hamilton's knowledge of the case at that time was quite limited. Hamilton Aff., ¶2. By sometime in November of 2001, AUSA Hamilton had obtained USAO approval of a plea agreement with Aguirre which

contained the drug quantity agreement previously negotiated by AUSA Sinnott. In processing that plea agreement, AUSA Hamilton relied upon AUSA Sinnott's superior knowledge of the case and did not perform any independent analysis of the wiretap intercepts to determine if any cocaine quantities which could be gleaned from those calls would exceed 15 kilograms when added to the 10 kilograms seized by DEA and the more than 3 kilograms previously purchased by the CW. Hamilton Aff., ¶¶3-4.

On January 24, 2002, Aguirre entered a guilty plea pursuant to a plea agreement which, in pertinent part, provided that the parties would take the position that the quantity of cocaine attributable to Aguirre was between 5 and 15 kilograms and that the plea agreement was not binding on the Court. See copy of Aguirre's plea agreement attached hereto as Exhibit 3; Hamilton Aff., ¶5. In the plea agreement, Aguirre also waived his right to appeal the Court's adoption at sentencing of any of the positions agreed to by both parties in the plea agreement (such as a drug weight of 5-15 kilograms).

D.  **Aguirre's Presentence Report**:

On or about May 7, 2002, the government submitted to the Probation Office a statement of Aguirre's offense conduct which was over 300 paragraphs long. Hamilton Aff., ¶5. However, Probation Officer Iris Golus ("P.O. Golus") reviewed the government's submission and felt that it did not adequately identify the

4

quantities of cocaine which Aguirre had sold to his customers. Hamilton Aff., ¶6. P.O. Golus communicated this concern to the Court, which held a status conference on the issue on June 10, 200. Id. At that status conference, the government submitted to P.O. Golus a 23-paragraph supplemental submission identifying additional drug quantity estimates based on coded conversations Aguirre had with his cocaine customers which were intercepted during the wiretap-phase of the investigation. Hamilton Aff., ¶¶6-7.

The Probation Office reported to the Court that "[a]n analysis of these transactions [covered in the government's supplemental submission] reveals that Aguirre sold approximately 3.7 kilograms of cocaine to these [6] individuals." PSR ¶358. The Probation Office recommended adding this quantity of cocaine to the quantities of cocaine involved in the CW's controlled buys, the 10 kilograms seized from Aguirre and Cruz on June 20, 2000 and the 988.8 grams of cocaine which the Court had attributed to Javier Gonzalez (the only Aguirre customer and co-defendant to have been sentenced at that point), making Aguirre accountable for 18.2 kilograms or more than 15 but less than 50 kilograms of cocaine. PSR ¶¶357-358; Hamilton Aff., ¶8.

In his objections to the PSR, Aguirre denied that two of his customers were buying from him quantities of cocaine as large as those attributed to them in the PSR, but "concede[d] that the Court can reasonably find that the amount of cocaine attributable to him

in the instant conspiracy is over 15 kilograms but less than 15 kilograms. . . ." Aguirre's objections to PSR ¶¶316-321, as attached to the October 21, 2002 Addendum to Aguirre's PSR.

### E. **Aguirre's Sentencing Hearing**:

Aguirre's October 28, 2002 sentencing hearing focused on two issues: whether Aguirre should be given a two-level, role-in-the-offense enhancement and his motion for a downward departure based on the conditions of his pre-trial confinement and his status as an incarcerated alien. The bulk of the sentencing hearing was devoted to the first issue. See pp. 3-25 of sentencing hearing transcript ("Sent. Tr."). After considering Aguirre's PSR and substantial oral argument, including numerous references to intercepted conversations between Aguirre and his associates, this Court reached the following conclusion:

> I think that while there's some ambiguity in certain of these conversations and contacts, that there is sufficient evidence for me to find that the defendant was a supervisor, but I don't really have to find that he was a supervisor. I think that there's ample evidence here to find that he was one of these other things, leader or manager of this criminal activity or organizer. I prefer actually the "leader" of this activity because no matter how you look at these activities, in terms of whether there's supervision or not supervision, the facts that are not in contest, and even those that are in contest, show him to be a leader of this activity. There might be more than one leader in a situation like this, but this defendant was certainly , on the basis of what I see in the presentence report, a leader of this criminal activity. As I say, I think he's also a supervisor, but I only need to find that he was one of those four categories; namely, organizer, leader, manager, or supervisor. And I think that "leader" describes his role very well, and so I'm going to adopt the presentence

report's determination [on this issue].

Sent. Tr. at 25-26. The Court also found no merit to either prong of Aguirre's motion for a downward departure. Sent. Tr. at 27-29. The Court's analysis yielded a Total Offense Level of 33 and a Guideline Sentencing Range ("GSR") of 135-168 months. Sent. Tr. at 3 and 28.

Significantly, when the Court asked the government for its sentencing recommendation, the government explicitly referred to its obligations under the plea agreement and abided by those obligations:

> As [Y]our Honor may recall, the government in good faith relied at the time of the plea agreement on the lower estimate of the drug quantity. Your Honor may recall you had a hearing or a status conference on that matter, and appropriately the government is therefore bound by the recommendation it made and the statements that we made in the plea agreement. The government recommends a period of incarceration of 120 months, [Y]our Honor. . . .

Sent. Tr. at 29-30, copies of which are attached hereto for the Court's convenience as Exhibit 4. The Court ultimately sentenced Aguirre to 135 months, the low-end of the GSR which the Court found applicable based on its drug-quantity and role-in-the-offense findings.[1]

---

[1] Aguirre challenged the role enhancement on direct appeal, but the First Circuit granted the government's motion for summary disposition, finding that "the record contains sufficient evidence to support the inference that appellant Camilo Aguirre ("Aguirre") acted as an organizer and/or leader of others involved in the drug conspiracy." March 4, 2004 Court of Appeals Judgment.

7

II. **ANALYSIS**

    A. **Since the Government Did Not Breach the Plea Agreement, Aguirre Cannot Show Ineffective Assistance of Counsel Due to the Latter's Failure to Allege Such a Breach:**

In his Section 2255 motion, Aguirre

> submits the question of whether the defense counsel was ineffective for not noting to the Court the fact that the government breached the plea agreement by not bringing to the Court's attention the fact that the amount of drug[s] stipulated in the plea agreement was 5 to 15 kilograms of cocaine instead of 18.2 kilograms as was found by the Court. This finding increase[d] the Petitioner's sentence from level 32 to level 34, in violation of the plea agreement and in violation of Rule 11(e)(1)(C).

Memorandum of Law in Support of Petitioner's Motion Under Section 2255 of Title 28 ("Aguirre Mem.") at 15.

Insofar as Aguirre seeks to suggest that his plea agreement with the government was somehow binding upon this Court pursuant to what was then Fed.R.Crim.P. 11(e)(1)(C)[2], he is simply and demonstrably mistaken. Paragraph 7 of his plea agreement specifically states that "[t]he sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge." Exhibit 3, ¶7. That same paragraph also specifically states that "Defendant's plea will be tendered pursuant to Fed.R.Crim.P. 11(e)(1)(B)," not what was then Rule 11(e)(1)(C). Id.

---

    [2]What was formerly Fed.R.Crim.P. 11(e)(1)(C) is currently codified as Fed.R.Crim.P. 11(c)(1)(C).

Moreover, as the transcript of Aguirre's sentencing hearing clearly indicates, there was no breach of the plea agreement on the part of the government. Far from "not bringing to the Court's attention the fact that the amount of drug stipulated in the plea agreement was 5 to 15 kilograms of cocaine" (Aguirre Mem. at 15), the government did exactly that and based its own sentencing recommendation on the lower drug quantity which the parties had (mistakenly) agreed to in the plea agreement. Sent. Tr. at 29-30.

To establish ineffective assistance of counsel, a defendant must show that his lawyer's performance fell below an objective standard of reasonableness, and that he was actually prejudiced thereby, meaning "that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687 and 693-94 (1984). In the instant case, since the government's position at sentencing involved no breach of the plea agreement, Aguirre cannot have been prejudiced by his attorney's failure to allege such a breach at the sentencing hearing.

    B.    **Aguirre's <u>Booker</u> Claim Is Without Merit Because the Ruling in <u>Booker</u> Does Not Apply Retroactively to Final Convictions Like Aguirre's and Because, Even If It Did Apply, the Sentencing Findings Made by this Court Did Not Violate Booker:**

Aguirre's second argument in his Section 2255 motion is that the Supreme Court decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 124 S. Ct. 2531 (2004), and United

States v. Booker, 125 S. Ct. 738 (2005), bar sentencing courts from applying sentencing enhancements based upon judicial fact-finding. Aguirre Mem. at 18-21. However, his argument is fatally flawed fro two reasons.

In the first place, the First Circuit, agreeing with several other Circuits that have considered the issue, has ruled that "Booker does not apply retroactively." Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005). See also United States v. Fraser, 407 F.3d 9, 11 (1st Cir. 2005)("This court has held that petitions under 28 U.S.C. § 2255 are unavailable to advance Booker claims in the absence of a Supreme Court decision rendering Booker retroactive")(citing Cirilo-Munoz).[3] Given that Aguirre's conviction became final in June, 2004[4] and that Booker is not retroactive, Parker's claim for resentencing under Booker has no merit.

Even if Booker could be applied to the instant case, Aguirre

---

[3] The government does not address separately Aguirre's reliance on Apprendi and Blakely because, unlike the instant case, the former involved sentencing enhancements which increased the maximum penalty and because "Blakely claims are now viewed through the lens of United States v. Booker, __ U.S. __, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)." Cirilo-Munoz, 404 F.3d at 533. However, the First Circuit also has ruled that Apprendi and Blakely-like claims would not apply retroactively. Id.

[4] See Clay v. United States, 537 U.S. 522 (2003)(if prisoner's conviction is affirmed on direct appeal and he does not file a petition for certiorari, the judgment of conviction becomes final when the time expires for filing a petition for certiorari - i.e., 90 days after entry of the court of appeals' judgment).

totally misunderstands the gravamen of that decision when he argues that it prohibits the kind of judicial fact-finding involved in his sentencing by this Court. In the wake of Booker, the federal Sentencing Guidelines are advisory instead of mandatory. Subject to the applicable statutory maximum sentence (which in Aguirre's case was life, pursuant to 21 U.S.C. § 841(b)(1)(A)), sentencing courts are not only free but expected to decide whether or not there is a factual basis for applying certain sentencing enhancements. As the First Circuit recently observed:

> the use of judge-made findings at sentencing does not undermine "accuracy" (in terms of substantially different outcomes) or undermine fundamental fairness. Such judge-made findings have been the conventional practice throughout our nation's history. They will, post-Booker, continue to be the rule where the sentence is within statutory limits.

Cirilo-Munoz, 404 F.3d at 533. See also United States v. Perez-Ruiz, __ F.3d __, 2005 WL 2046023, *1 (1st Cir. 2005)("The district judge computed the guideline range as 188-235 months based upon the quantity of drugs he found attributable to Perez and further enhancements for use of a firearm and Perez' supervisory status. Under United States v. Booker, 125 S.Ct. 738 (2005), these findings may be made by the judge alone").

III.                           **CONCLUSION**

For all the foregoing reasons, the government respectfully submits that Camilo Aguirre's Section 2255 motion is without merit

and should be denied in its entirety.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Patrick M. Hamilton
PATRICK M. HAMILTON
Assistant U.S. Attorney
U. S. Attorney's Office
John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617)748-3251

Date:    September 13, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing to be served on August 25, 2005 via certified mail, return receipt requested, upon Camilo Aguirre, Reg. No. 23174-038, F.C.I. Elkton, P.O. Box 10, Lisbon, Ohio 44432.

Date:    September 13, 2005        /s/ Patrick M. Hamilton
                                    Patrick M. Hamilton

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.